The next case for argument is 151866, Otter Products v. United States. This case is 151866, Otter Products v. United States. This case is 151866, Otter Products v. United States. Ms. Farrell, I think we're all ready to proceed. Thank you, Your Honor. Just to clarify just up front, so we, based on these recent orders, so you've gotten the material from the CIT. Yes, Your Honor. That includes the products and also the information that the other side wanted with respect to declarations and so forth. Yes, Your Honor. It's a confidential document that was part of an exhibit. It was a transferral as well as a declaration. And we have the exhibits that were transferred as well as the declaration. Let me just ask your friend on the other side that he agrees. There's no dispute there that all of that information has been provided. Yes, correct, Your Honor. Thank you. Thank you both. Thank you, Your Honors. May it please the Court. Beverly Farrell for the United States. Your Honors, the trial court erred fundamentally in this case because it did not use the common meaning of the word container when it began its analysis. What the court did instead was design a new definition based on running an ad justum generis analysis of a definition that happened to have a list of, non-exclusive list of examples of what would fall within the meaning of container. And that was the fundamental error that the trial court committed. When it did that, when it conducted the ad justum generis analysis, it came to the conclusion that containers of heading 4202 are containers that require you to open or close them to use the articles inside. Okay, before we get into that argument with respect to error there, do you disagree? The Court of International Trade, as I understand it, said we're going to look at what the essential characteristics are here. And it came up with four kind of categories, organizing, storing, protecting, and caring. Am I right so far? Yes, Your Honor. Does the government take issue with respect to that? Your Honor, yes. With respect to those four categories, we know that this court has used those four categories in understanding the ad justum generis analysis for heading 4202. Both the first portion of heading 4202, as well as the second portion of heading 4202. Because that heading is broken in two pieces by a semicolon. And that second portion is actually circumscribed by the materials of which those articles are made. The first portion, different set of exemplars, but it doesn't have that type of limiting factor of what is your material. This court, since totes, even before totes, back during the two-sys, in understanding the predecessor heading, which dealt with travel bags and those types of articles, looked at four factors. Organizing, storing. Is there a single case that you can cite where we didn't require that all four factors be satisfied? Your Honor, we're not aware that they were required or not required. They were always mentioned, but there are instances where this court has used the word or. And the reason the government... We've never actually said it, but we've also never endorsed a factual circumstance in which all four were not satisfied. That's right, Your Honor. I mean, there were instances where one factor is kind of mentioned offhandedly. In the totes case, the court mentions offhandedly carrying, because it notes, well, it has handles, but it's sitting in the trunk of a car. And so it doesn't really consider that the handles are playing the role of carrying, because it's actually sitting in the trunk of a car and being conveyed by the car. So there's not clarity that these four factors are actually mandatory. When you look at the items, the exemplars in the heading, for example, organizing, the trial court grappled with that. What do you think we meant in Avenues in Leather, the 2005 one, where we said, we have previously held that the quote, the common characteristic of unifying purpose of the goods in heading 4202, consists of organizing, storing, protecting, and carrying various items. When one talks in terms of a unifying characteristic, the court didn't say that it was mandatory that all four be met, but rather that these four factors are somehow a unifying characteristic of the heading. And so that's an example of where we've said and, and we were quoting ourselves when we said and. Yes, Your Honor. But it's unclear that the and was meant to be a mandatory and. Sometimes and can just be used as these are the four things, this, this, and this. But not that all four are mandatory. But even if it's not, even if all four aren't mandatory, and I'm not sure I agree with you that we haven't said that they're mandatory in the past, but even if all four weren't mandatory, if you were, if you're looking at doing a similarity analysis, you'd have to at least say that it's more, you have to have more than one. You might, you might say that, Your Honor, but fundamentally, the meaning of the word container has been defined to mean container, store, and also something that holds or carries. So two of the factors are factors that are almost inherent in the meaning of the word container. So virtually all containers are understood by definition, common meaning, that they do, that they do hold within, that they carry something within themselves, and that they store. Because if you're holding something within yourself, unless you are removing or using the article that's being held within, unless you're actually using that article, when that article is not currently being used, if that container still encloses that article, it's storing by definition. I don't understand what you said. So if all the functionality is available with this case on it, I mean, it's functional. Right. So I use it just because I don't use it every second of the day. That means it's being stored when I'm not using it? Yes, Your Honor, because container, the common meaning of the word container is to contain or store. Indeed, the trial court found that as one of the meanings of the word container. So the fact that it can store or contain, it's doing that simultaneously. So the fact that you're not using an article at that exact moment in time, if you set it aside, the moment it's set aside, that container is now serving a purpose of storing because it's not using the articles that are being contained by the container. Whether you're removing them from the container or whether you're using them in the container, when you're not actually using the articles that are being contained, then at that moment in time, they're being stored because the common meaning of a container is to contain or store articles. So it's actually in the definition, at least according to the trial court, one of the definitions the trial court found to be the common meaning of the word container includes storing. Of course, the CIT went further and said when it comes to understanding of storing and then you look at the listed items like trunks, suitcases, vanity cases, attache cases, briefcases, school satchels, etc., the notion of storing in all those examples is literally taking an item, putting it into something and putting it away so you're no longer really using that item. The phone cases we're talking about here, to the extent this is a case or a container, you're using that phone as it resides inside or attached to the case at hand. Your Honor, there are also two exemplars in this heading, a binocular case and a camera case. The camera case is not a camera bag where you throw the camera and film and things like that. It's an actual form-fitted case that goes over a camera. Right, but the camera's not usable while the case is going over it. If the case is open or in some instances now, there are cases that are similar to the cases here where they're made of plastic and they see through and you can attach, you can swap out and attach the lenses. Well, there might, but we're talking about things that are normally understood. I think for camera cases, the normal understanding is that you've got a camera in a case and when you want to use the camera, you remove from the case. I'm not going to dispute with you or debate with you whether there might be some conceivable products on the market that allow you to use the camera while it's in the case. But I think, can one not fairly assume that when we're talking about camera cases, we're talking about something that is stored in a case and removed from that case when it is being used? No, Your Honor, because a typical camera case that's form-fitted actually has a piece that flips over. The old style cameras that had the interchangeable SLRs where you took the single lens reflex, you could take it off and snap a new one in. Those camera cases actually came up and over the camera and they clipped on the top. You would then open it and it would hang down and you would use it while the camera was still inside the case. Okay, and what we're talking about here, you don't have to open it, right? It's in the case and in order to be functional, it's just in its normal state. There's no need for opening or closing. There's no need for opening or closing, Your Honor. Isn't that something that differentiates that from the camera case? No, Your Honor, because it may differentiate it from one style of camera case that I'm referring to, but there are, as technology moves forward, you can have cases that surround the camera. We provided samples to the court, links to types of cases that Customs had encountered. One is where there's plastic that surrounds the camera, but it's usable inside because they're using it underwater. It's for underwater photography. Isn't that more like an accessory than a case, though? You're stretching here to find one example that you think you could pull out to somehow say that these fall within that. Again, those are things that probably are technology that has post-dated the original adoption of these categories. If we want to look at what these categories were really intended to encompass, we should be thinking about camera cases at the time that these categories were laid out. Those camera cases are clearly the kind that Judge Post was talking about, where you have to remove the camera from the case for it to be operable. We've said not only is the question of do you satisfy these things, but also is there not another category that is more appropriate? Your Honor, you don't have to remove the camera from the case to use it. You just have to open it and let the flap fall down. It's true with binoculars as well. The binocular case where the lens caps open and just hang down, and then they're put back over. You don't have to remove it from that. Your Honor, the position that these articles are somehow locked in time in 1989 when the tariff is enacted, I don't think that that's how this court has perceived the way to interpret this tariff. I never said they were locked in time, but I said if we're trying to determine what the factors are that would make them similar, we should at least consider what they were considering when they came up with those factors, and those factors that this court has repeatedly endorsed and considered. Right, Your Honor. And this court has never endorsed that the article has to be removed to be used. So that's not a factor this court has considered. The only four factors this court has ever considered are organizing, storing, protecting, and carrying. And as we said earlier, the two factors of storing and carrying are inherent in the meaning of the word container. So organizing and protecting now are the two items that aren't inherent in the meaning of the word container. But maybe it's possible that for the factor of storing, what the CIT was getting at was that taking the item out of the container so that you can use the item is part and parcel with the meaning of storing. And then in that sense, the CIT would not have created a fifth factor. It would simply have been applying one of the four factors. But, Your Honor, it's also possible that storing doesn't have to be that of these four factors, that all four are not mandatory at every single moment of the life of that particular article. It may be that sometimes it's protecting, sometimes it's storing. I mean, if a trunk has to organize, carry, store, and protect, if it has to do all four things at all times, then the minute you take your articles out of the trunk, the trunk stopped doing that job and it stopped being a container. That makes no sense. It's still a container. So, I mean, to say that all four factors for a container must simultaneously exist and be occurring at the same time, I think is faulty. And I think that's where there's tension in saying that all these four factors are mandatory with an and. Maybe they're mandatory, but at different moments in time. There's a way to reconcile that, perhaps. That instead of at one moment in time, all four factors are occurring simultaneously, when we stop using the cell phone and we set it down and we throw it in our book bag, it stops being used and it's now being still protected, but simultaneously it's being stored because it's being set aside for future use. Just like a trunk would, holding your clothes. When you're wearing your clothes, the trunk can't be storing those clothes, so it can't do it 100% of the time. So if it can do any of these four factors at any given moment in time, then I think it satisfies the heading 4202, similar containers. Thank you. I think we have your time here. Let's take your rebuttal time and hear from Mr. Mastriani. Good morning, and may it please the Court. Your Honor, the government continues to do before this Court what it did before the CIT, for which it was criticized. It defines container, and it also uses the verb contain to define, contain or advance its position. It never before the CIT or before you in its briefs defines similar container, because that's what we're talking about here. We're not talking about a container that could be on a ship. We're not talking about a container that could have propane gas in it or a silo that has silage or other types of agricultural materials in it. We're talking about containers similar to the exemplars to the left of the semicolon in heading 4202. That is a wall, and you cannot cross over into it, as the government also did in its reply brief, by looking at shopping bags and jewelry boxes. Now, the point is that this appeal involves very simple and very intuitive issues. And to me, it calls to mind this Court's trenchant observation in the Pilatex case. And that observation is, the reader unfamiliar with the convoluted method the law uses to decide these cases might wonder why the judge is strained so hard to determine something any consumer can tell him. Well, in this case, the Court need not strain hard if at all. Can I ask you a point that your friend was kind of committing on, which was on the storing issue. That, like a trunk where it stores at some points, but not when you're using the clothes that are in it, her view, as I understood it, was anytime you're not using this iPhone in its case, then the function of the case is to store it. Is that the way you understood it? No, you're right. I disagree. And if that's right, why is that wrong? I disagree. Because, first of all, this is a physical exhibit, too. It's not the actual physical exhibit that counsel has here, but it's the same one. This is a commuter case. When the phone is in here, and as long as it's on, it's available to me. It buzzes, gives me alerts as to text, calendar alerts, e-mails. If it rings, I can see that it's a call. I can see who's calling. Yeah, but I think her point was, but there might be some few moments in a day, at least, where none of that is happening. So in those few moments, when it's not ringing, buzzing, or doing anything actively, is it performing the function of storing? I would disagree. Because the point is, and the judge at the CIT made the point, and she said, the essential characteristic or purpose of storing implies some future use as opposed to present use. Storing is, by definition, inconsistent with use. The phone, whether it has a case on or not, if it's off, it's not storing itself. It's just there. It's the same argument for carrying. The phone, the case does not carry the phone. The phone carries the case, if you will. So I disagree that the storing characteristic that is shared by and unites all of the exemplars is found in the Otterbox case. In your view of the first issue we were talking to your friend about, which is you have to meet all four of these criteria, or is any one sufficient, whatever, what is your position on that? We believe that while there may not be a de jure test, and I think this court in Winron made that comment about totes, said we didn't express an actual test. It's still a de facto test because all of your law, starting with totes, avenues of letter one and two, sports graphics, SGI, process plastics, says that in a generis analysis, the court must identify all of the characteristics that unify the exemplars. All means all. You cannot discriminate. You cannot say we've identified four. We're only going to use one in this case. We'll use two in that case. Maybe we'll even think about three in the future. All of these characteristics unite the exemplars, and if they're missing in the merchandise that's under consideration, especially where it has a specific and primary use that's totally inconsistent with the exemplars, which this product does have, then there is no similarity. Couldn't there conceivably, though, be a circumstance in which, yes, you have to consider all of these factors because they are the unifying factors and the court could find that, well, three out of four are present here, and as to the fourth, there's nothing inconsistent with the fourth, for instance. In that hypothetical potentially, but I don't think so, because here what trumps everything, even if you found all four characteristics in this item, the fact that it's 100% accessible, 100% of its functionality is usable while the electronic device is in the case is something that is not shared by any single one of the exemplars, and counsel. So then would you agree with the government that that's a fifth factor that we're now applying? Not at all. That's the Victoria's Secret. Victoria's Secret did not come up with this inconsistent, this specific and primary use that's inconsistent with the characteristics or the exemplars in the heading. It expressed the law from totes, the SGI cases, and they haven't used a letter, certainly. And I will just point out that the government trolled the Internet. Millions of products, there are millions of these products that it looked through on the Internet. It came up with three examples. One is exactly as you said, Your Honor. It's an accessory for a camera when you're using it underwater. When you come up, you take it out of the case, and you use it just as you would. The camera case, the leather camera case, that if you go to the link and look at it,  and take the lens cap off, no less, and then to use the camera. If you look at the user comments in there, there's other functionality problems with it. You can't charge it. You cannot get to the memory card. That's the problem with trolling the Internet like this and having attorney argument. Government counsel is trying to inject facts into this appeal when it only involves issues of law. Similarly with the binocular case. If you look at that link, it talks about, it's completely enclosed, the binoculars. You have to unfold it, remove the lens caps from both the front of the lens and the back of the lens, and then you can use it in there like this while it's hanging. But the users say, and the article criticizes the fact that it's difficult for some people because their nose hits it, and it's also difficult to use the focus ring. Those are unavailing. The fact of the matter is you have to open those products to use them, just like the exemplars in the first part of heading 4202. And the fact of the matter is that no reasonable consumer, I don't see any reasonable consumer, we could go out there on the quad in front of the White House and stop 1,000 people. No one's going to equate. Well, we're not going to add more facts to the record. But I don't think, just the point being, just as the court in Victoria's Secret said, that it's what comes into the mind of a reasonable consumer. If they see a similar container in a generis analysis and they look at those exemplars, what comes into that reasonable person's mind as to what would be a similar container? It's not going to be a case like an OtterBox case that holds an electronic device that is fully accessible and fully usable. Can I get you back to the four factors that we've said we all need to look at when considering the term similar containers? One of the factors is organizing. And arguably a few of these items listed don't necessarily organize items in the case. For example, spectacle cases. Would you say that maybe spectacle cases serve the function of storing, protecting, and carrying, but they don't necessarily organize the spectacles in the spectacle case? I could pull out my spectacle case. I could look at that spectacle case. I imagine there are people in this courtroom with spectacle cases that have clean cloths in there and other items. Let's just think about the standard garden variety spectacle case where it's almost like a clamshell and you put it in or it's like some leather pouch and you just slide it into the side and that's it. To me, that isn't really organizing it. I would just say this. I do think that does ignore that most people do put other items in their spectacle cases, but in your scenario, is that organizing? In our mind it is. Well, then what does organizing mean? Because maybe I don't understand what it means. The government's definition is to put things into tidy order, i.e., organized files. That's the definition used by the government before the CIT. The CIT judge said the cases do not organize electronic devices in even a rudimentary fashion because it's just as organized if it sits there like this or if it sits in the case. It doesn't matter. The case is just an accessory that's meant for protection. That's the whole purpose of these products is protection. Just to stick with this hypothetical here for a minute, the CIT has specifically said that organization implies more than one article in a case, right? Generally, yes, that's correct, yes. And so your point is that even if some people only put one thing in their eyeglass case, because you could put more than one? Well, let's just say this to take your hypothetical further. Let's just say that spectacle cases don't have an organizing characteristic to them and ignoring the fact that a healthy minority, if not a pretty good majority of people, do have other items in there. It's all of the exemplars. So if you just find some spectacle cases don't have an organizing factor because people don't put something in them along with their spectacles, then you have all these other exemplars that have numerous things in them. I mean, the holster has clips and bullets. The camera cases have extra lenses and lens caps and SD cards and cables and straps and so on and so forth. You can go on and on and on and on. I mean, everybody in this courtroom is intimately familiar with most, if not all of these exemplars. And we all know that these exemplars, for the most part, have numerous things in them. And with the spectacle case, what if you have spectacles and you have your sunglass clip-ons? Where do you keep those? You don't put them in your pocket or another item. You put them in with your spectacles. And the cleaning cloth, you put them in there. So I grant you that your hypotheticals showing just one item in there may not implicate organizing in the way people normally think about, the common and commercial meaning, the dictionary meaning that you, Your Honor, just went through in the clear correct case to come to your decision. The point is that this is what comes into a reasonable person's mind. And a reasonable person's mind thinks of these items as storing, protecting, organizing, and carrying. The fact that they don't all have those characteristics going on at the same time 24-7 is not relevant to the analysis. They all have those characteristics. They all have to be considered. They all have to apply. If you want to express an actual legal test, fine, but I don't think you have to because your case law says that they all have to be considered in connection with Heading 4202. And that's something that the government refuses to acknowledge. And they continue and they always will refuse to acknowledge what a similar container is. Because even with their definition of contain, the verb, it refers to a can of oil. Every can of oil I've ever dealt with from the old style, ones where you puncture through with the spout, is sealed. Or in the plastic ones that you run into nowadays, you've got to uncap it. It's got a sealed cap. You've got to break the seal and open it and get the oil out. So every definition that the government has used implicates products that are closed receptacles. They're not trash cans. They're not inboxes. They're not milk crates by any stretch of the imagination. Thank you. I'll give you two minutes. Thank you, Your Honor. Briefly, Your Honor, Otter is complaining about the government not understanding what similar containers are. The government analyzed this case as first, what is a container? Similar container in the context of Heading 4202, of course, this court has explained. That's a simple ad justum generis analysis. One does not go out and define similar container. One simply looks to the court, the court's analysis of the four factors, and says similar containers are basically right now these four factors. The question, of course, is whether or not they're all four factors. And I would argue, Your Honor, that they're not. The issue of storing, talking about what that means, the meaning of storing, Otter argues that we're conflating somehow that meaning with protecting. We're not. With the same meaning that we put before the court, it's the same meaning we have in our briefs here, the trial court as well as here, which is storing means to put something that is not being used in a place where it is available, where it can be kept safely, et cetera, to collect and put something into one location for future use. The fact that you take this article and set it aside, it is now being stored. And as Your Honor recognized, yes, cell phones are ubiquitous. Yes, there are people who are very close to 24 hours a day with their cell phones. Everybody under the age of 30. There are brief moments in time, however, Your Honor, when these phones are being set aside. And it is at that moment that this case plays the role of storing simultaneously with protecting. The other thing that's interesting is we're dealing with technology. Technology is changing. This is a new device that's come up. This is a personal device like a pair of binoculars or like a camera, even a small electronic camera. The GoPros have plastic that go around and the camera's inside and you can use it and your Wi-Fi will send a signal out and you never have to open the thing. This technology is advancing. So the question is whether or not do these cases that we're seeing here, as counsel noted, in these cases, this one has got a hard front, something is being placed inside here. The fact that it's staying in here and you can still use it while it's inside, that's just fundamental to today's cell phone. That Otter was clever enough to come up with a device that you never really, I mean, other than to get at the card or if you have a problem with your battery or you need to do a restart, there are some times you may want to take it out. But the trial court's right. Otter's correct in saying that this stays in there in a semi-permanent fashion, but that's just the nature of the technology. There's nothing inconsistent. In fact, the fact that the phone stays inside here almost semi-permanently really enhances the protecting factor of this phone, of this case for a phone. So there is nothing inconsistent with the four factors. The fact that it stays inside, it just happens to be that technology allows it, but more significantly, taking it in and putting it out, off and on, these phones are thin and they're expensive, and if you drop them, I would prefer to keep my phone always self-contained inside of its protective case because staying in there most of the time actually enhances. So the concept of, oh, you don't take it out, that's right. Just curious, are all the phone cases we're talking about here, the kinds of phone cases that completely enclose the phone, like the example you just presented there? This one, Your Honor, is the Defender. The Defender has, you can hear the top. I understand that. No, Your Honor, they don't. Because I'm just letting you know the kind of case that I have on my smartphone just goes around the back. Right, and those have not been classified. Those have not been, they're not the subject. In fact, Otter did not appeal those that were classified in that heading. But certain of them don't get considered. Certain of those where they just sit on the back, these actually. Your Honor, can you just explain that? They did not, I mean, so that they're the problem. There were ones where there was just silicon and it was just kind of a case on the back, and it didn't really come across the front. But are those, what are those that you've got in your hand? This is the commuter version of these articles. They have two pieces, and what comes with is an installation piece of plastic that goes over the front of your screen. So you just set it down and you rub out the air bubbles and it stays on the front of your screen. So this, it comes around the phone. If I may, Your Honor, I have a sample of a phone, an actual phone that's inside of an Otter case. Okay, I'm just a little uncomfortable about this, doing all of this on rebuttal, because the other side has really not had a chance to respond to this. Well, Your Honor, then just to go back to what was raised about the fact that the government did not discuss similar, we did. And once again, the fact that these stay inside the container is not inconsistent with the four factors. In fact, it enhances the factor of protecting. Thank you, Your Honor. Thank you. Thank both sides for the cases.